<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Barry J. Roy
Jeffrey A. Cooper
*Counsel to Debtor/Debtor-In-Possession*

In re:

RLB FOOD DISTRIBUTORS LP d/b/a FRESHPRO
FOOD DISTRIBUTORS,

                    Debtor.

</td><td>

Chapter 11
*(Subchapter V)*

Case No. 24-12110 (JKS)

Honorable John K. Sherwood

</td></tr>
</table>

## SMALL BUSINESS DEBTOR'S PLAN OF LIQUIDATION

This Plan of Liquidation is presented to you to inform you of the proposed Plan for liquidating the assets of RLB Food Distributors LP d/b/a FreshPro Food Distributors, the debtor and debtor-in-possession ("Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____, 2024.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2024. THE BALLOT MUST BE SENT BY REGULAR MAIL TO THE FOLLOWING ADDRESS: Rabinowitz, Lubetkin & Tully, LLC, 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039, Attn: Barry J. Roy, Esq.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2024 at _____ __.M. IN COURTROOM 3D AT THE MARTIN LUTHER KING, JR. COURTHOUSE, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Date: July 12, 2024                          **RABINOWITZ, LUBETKIN & TULLY, LLC**

Barry J. Roy, Esq.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
(973) 597-9119
broy@rltlawfirm.com

## TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ............................ 1

**Article 1**
**HISTORY OF THE DEBTOR** ................................................................................. 1

1.1 Nature of the Debtor's Financial Affairs ................................................................. 1

1.2 History of Business Operations of the Debtor ........................................................ 1

1.3 Filing of the Debtor's Chapter 11 Case ................................................................... 2

1.4 Legal Structure and Ownership ............................................................................... 2

1.5 Debtor's Assets ........................................................................................................ 2

1.6 Debtor's Liabilities .................................................................................................. 2

1.7 Current and Historical Financial Conditions .......................................................... 3

1.8 Events Leading to the Filing of the Bankruptcy Case ............................................ 3

1.9 Significant Events During the Bankruptcy Case ..................................................... 4

1.10 Projected Recovery of Avoidable Transfers ......................................................... 6

**Article 2**
**THE PLAN** ............................................................................................................. 6

2.1 Unclassified Claims ................................................................................................. 7

    A. PACA Claims................................................................................................... 7
    B. Administrative Expenses................................................................................. 7
    C. Priority Tax Claims......................................................................................... 9
    D. Classes of Priority Unsecured Claims .......................................................... 9

2.2 Classes of Claims and Equity Interests................................................................. 10

    A. Classes of Secured Claims........................................................................... 10
    B. Class of General Unsecured Claims............................................................. 10
    C. Class of Equity Interest Holders ................................................................. 11

2.3 Estimated Number and Amount of Claims Objections.......................................... 11

2.4 Treatment of Executory Contracts and Unexpired Leases ................................... 11

2.5 Rejection of Executory Contracts and Unexpired Leases..................................... 11

2.6 Means for Implementation of the Plan.................................................................. 12

2.7 Payments ................................................................................................................ 12

2.8 Post-Confirmation Management ........................................................................... 12

2.9 Tax Consequences ................................................................................................. 12

2.10 Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan ... 13

**Article 3**
**FEASIBILITY OF THE PLAN** ................................................................................. 13

3.1 Ability to Initially Fund Plan ........................................................................... 13

3.2 Ability to Make Future Payments and Operate Without Further Reorganization ................. 13

**Article 4**
**LIQUIDATION ANALYSIS** .................................................................................. 13

**Article 5**
**DISCHARGE** .................................................................................................. 13

**Article 6**
**GENERAL PROVISIONS** ................................................................................... 13

6.1 Title of Assets ................................................................................................ 13

6.2 Binding Effect ............................................................................................... 14

6.3 Severability .................................................................................................. 14

6.4 Retention of Jurisdiction by the Bankruptcy Court ............................................. 14

6.5 Captions ...................................................................................................... 14

6.6 Modification of the Plan ................................................................................. 14

6.7 Final Decree ................................................................................................. 15

**Article 7**
**ATTACHMENTS** ............................................................................................. 15

**Article 8**
**FREQUENTLY ASKED QUESTIONS** ................................................................... 15

**Article 9**
**DEFINITIONS** ............................................................................................... 17

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor has determined that the highest and best return to creditors will be through an orderly liquidation of all of its assets. As of the Effective Date of the Plan, the Debtor will have wound down its business in a way to maximize a return of cash to the Debtor. Such cash proceeds from the liquidation and the wind-down, plus any cash left over from cash on hand as of the Effective Date of the Plan, will be used to pay priority general unsecured creditors *pro rata* according to their allowed claims after payment in full of: (1) Columbia Bank ("Columbia"), the Debtor's secured creditor; (2) allowed PACA Claims; and (3) administrative expenses. Each administrative expense claim will be paid in full on the later of: (i) the Effective Date of the Plan, (ii) the date on which such administrative expense claim is allowed by the Court, or (iii) such later date as an administrative expense claimant consents to receive payment.

As stated above, all priority general unsecured claims will be eligible for *pro rata* distribution from available funds after payment of: (1) Columbia; (2) allowed PACA Claims; and (3) administrative claims. At this time, it is not possible to estimate what the distribution to priority general unsecured creditors will be because the Debtor is still accruing administrative expenses and the Debtor is: (i) investigating causes of action that may bring assets into its estate through judgments or settlements, and (ii) the Debtor may object to certain claims. Therefore, the amount available for Distributions to Allowed Priority General Unsecured Claims may increase or decrease prior to a final distribution based on the foregoing and based on what value the Debtor can realize from the liquidation of its assets and the wind-down of its business. The Debtor does not anticipate being in a position where it would be able to make a distribution to general unsecured creditors.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1    Nature of the Debtor's Financial Affairs.

The Debtor operated as a full line high quality distributor of conventional and organic produce, fresh cut fruits and vegetables; deli items, cheeses, chilled prepared foods and other related products distributed to the upscale food arena, including food markets, specialty stores and convenience stores.

### 1.2    History of Business Operations of the Debtor.

The Debtor was formed in 1985. Until recently, the Debtor would ship millions of cases of fresh fruits and vegetables. The Debtor's major customers historically included Kings Supermarkets and Balduccis Food Markets. The Debtor had several more notable brand customers, including Fresh Direct and 7-Eleven.

1

**1.3**   **Filing of the Debtor's Subchapter V Chapter 11 Case.**

On February 28, 2024, the Debtor filed a Voluntary Petition for relief under Chapter 11, Subchapter V, of the United States Bankruptcy Code (the "Code"). The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey (the "Bankruptcy Court").

**1.4**   **Legal Structure and Ownership.**

The Debtor is a New Jersey limited partnership with 2 partners: RLB Food Enterprises (95%) and PF Ventures LLC (5%).

**1.5**   **Debtor's Assets.**

The Debtor's assets consist of: (1) cash on hand ("Cash"); (2) cash from the collection of accounts receivable ("A/R"); (3) a money market account at Columbia ("Money Market"); (4) proceeds of avoidance actions, including preferences (the "Avoidance Actions")[1]; and (5) the proceeds from the already completed liquidation of: (i) furniture, fixtures and equipment ("FFE"); and (ii) inventory ("Inventory").

On the Debtor's Official Form 206A/B [Docket No. 1] the Debtor lists the value of its assets as follows:

| | |
|---|---|
| Cash: | $1,377.336.00 |
| Money Market: | $373,389.00 |
| A/R: | $1,743,822.82 |
| Inventory: | $789,611.16 |
| FFE: | $200,000.00 |
| Avoidance Actions: | $Unknown |

The basis for the valuation of the assets is cost, with depreciation for reasonable use or depletion, where applicable.

**1.6**   **Debtor's Liabilities.**

For a complete list of the Debtor's debts please refer to the Debtor's Official Form 206D and 206E/F ("Schedule D" and "Schedule E/F," respectively) [Docket No. 1].

The Debtor has $500,000 principal in secured debt with Columbia. Columbia has a perfected lien on all of the Debtor's assets. See Schedule D. On May 7, 2024, Columbia filed a secured proof of claim in the Debtor's case in the amount of $503,959.44 [Claim No. 89].

---

[1] As set forth more fully below, the Debtor estimates that it made approximately $9,000,000 in payments to over 200 non-PACA vendors during the 90 days immediately prior to the Petition Date. At this point, the Debtor has not analyzed the merits of any claim that the bankruptcy estate may have against the recipients of such payments pursuant to 11 U.S.C. § 547.

2

The Debtor has an obligation to pay certain creditors (the "PACA Creditors") a total of $1,978,607.02 pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq.

The Debtor listed $32,500.00 of general unsecured priority debt consisting of unpaid bonuses owing to three employees prior to the Petition Date. However, the Debtor received authorization to pay such claims through the Final Order: (I) Authorizing But Not Directing the Debtor to Pay Prepetition Wages, Salaries, Compensation, and Employee Benefits; (II) Authorizing But Not Directing the Debtor to Pay Employee Incentives; (III) Directing All Banks to Honor Checks for Payment of Employee Obligations; and (IV) Granting Related Relief [Docket No. 63]. On April 23, 2024, the Debtor filed amendments to its Schedule E/F in order to list 126 employees that were terminated prepetition as potential priority unsecured creditors [Docket Nos. 149 and 150]. The Debtor estimates its liability to its former employees to be as much as $2,000,000 under Section 507(a)(4) and (5) of the Code.

The Debtor listed $4,895,206.85 of general unsecured non-priority debts consisting of, among other things, trade and business debt, vendor and service fees (some of which are disputed or subject to offset). See Schedule E/F. This amount could be higher to the extent that the amount of the terminated employees' claims exceed the priority claim amount caps set forth under Section 507(a) of the Code.

### 1.7    Current and Historical Financial Conditions.

The Debtor filed its balance sheet (as of the Petition Date) and 2022 tax information on February 29, 2024 [Docket Nos. 10 and 11]. On April 19, 2024, the Debtor filed its Monthly Operating Report ("MOR") for the period from the Petition Date through March 31, 2024 [Docket No. 137]. On May 21, 2024, the Debtor filed its MOR for April 2024 [Docket No. 187]. On June 17, 2024, the Debtor filed its MOR for May 2024 [Docket No. 209].

In sum, the Debtor continues to liquidate its remaining assets, primarily accounts receivable and avoidance actions, and has benefitted from the application of the automatic stay against collection/enforcement efforts against the Debtor or its property. However, as set forth previously, the Debtor's liabilities remain too large to sustain its business. Therefore, its current financial condition, as well as common sense, dictates a continued orderly liquidation and wind-down of the business.

### 1.8    Events Leading to the Filing of the Bankruptcy Case.

On February 28, 2024, the Debtor filed the Declaration of Floyd Avillo in Support of the Debtor's Chapter 11 Petition and First Day Motions (the "Avillo Declaration") [Docket No. 7]. Floyd Avillo is the President and Chief Operating Office of the Debtor.  The Avillo Declaration details the history of the Debtor, the nature of its operations, and the events leading to the necessity of this case.

3

**1.9**    **Significant Events During the Bankruptcy Case.**

Among the significant events that occurred or will occur during the Chapter 11 case include the following:

1.    The Debtor commenced its bankruptcy proceeding on February 28, 2024 as the result of the filing of a Voluntary Petition pursuant to the provisions of Subchapter V of Chapter 11 of the Code.

2.    On February 28, 2024, the Debtor filed its first day motions including emergent motions authorizing: (i) maintenance of existing cash management system [Docket No. 3], (ii) to use cash collateral [Docket No. 4], (iii) payment of prepetition wages, salaries, compensation, and employee benefits [Docket No. 5], and (iv) continuation of utility services and approval of adequate assurance of payment to utility companies [Docket No. 6]. An expedited hearing was granted [Docket No. 13], and relief was granted on the foregoing motions on March 5, 2024 and March 7, 2024. [Docket Nos. 22, 24, 25 and 25].

3.    On March 4, 2024, the United States Trustee for the District of New Jersey appointed Mark E. Hall, Esq. as the Subchapter V Trustee respecting the Debtor's bankruptcy proceeding.

4.    On March 11, 2024, Charles Martirano ("Martirano"), a former employee, filed an adversary proceeding against the Debtor, Adv. Pro. No. 24-01140, seeking, among other things: (i) class certification, (ii) allowed claims against the Debtor in favor of Martirano and class members equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A), or under the New Jersey WARN Act PL. 2007, c.212, C.34:21-6, including any civil penalties; (iii) a determination that the first $15,150.00 of each Class member's allowed claim against the Debtor is entitled to wage priority claim status under 11 U.S.C. § 507(a)(4) and (5), and any remainder as a general unsecured claim; (iv) judgment in favor of each Class Member pursuant the federal and state WARN acts for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three years of employment or the final regular rate of compensation, whichever is higher), plus an additional four weeks of mandatory severance pay; and (v) an allowed claim against the Debtor under 11 U.S.C. § 503 for the reasonable attorneys' fees and the costs and disbursements that the Martirano incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6). On May 5, 2024, the Debtor filed a First Amended Answer to Complaint and Affirmative Defenses.

5.    On March 14, 2024, the Debtor filed an application to retain A.J. Willner Auctions, LLC ("A.J. Willner") as auctioneer for its FFE [Docket No. 39]. On April 4, 2024, the Bankruptcy Court entered an order authorizing the Debtor to retain A.J. Willner [Docket No. 101].

6.    On March 18, 2024, the Debtor filed an application to retain Rabinowitz, Lubetkin & Tully, LLC ("RLT") as its counsel [Docket No. 51]. On March 26, 2024, the Bankruptcy Court entered an order authorizing the Debtor to retain RLT as its counsel [Docket No. 82].

7.    On March 20, 2024, the Bankruptcy Court entered a Final Order: (I) Authorizing But Not Directing the Debtor to Pay Prepetition Wages, Salaries, Compensation, and Employee Benefits; (II) Authorizing But Not Directing the Debtor to Pay Employee Incentives; (III) Directing All Banks to Honor Checks for Payment of Employee Obligations; and (IV) Granting Related Relief [Docket No. 63].

8.    On March 20, 2024, the Bankruptcy Court entered a Final Order: (I) Prohibiting Utility Companies from Discontinuing, Altering, or Refusing Service on Account of Prepetition Invoices, and (II) Deeming Utility Companies to Have Adequate Assurance of Future Payment Pursuant to 11 U.S.C. §§ 105(a) and 366 [Docket No. 64].

9.    On March 27, 2024, the Bankruptcy Court entered a Final Order: (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief [Docket No. 83].

10.    On March 29, 2024, the Bankruptcy Court entered a Stipulation and Consent Order Establishing PACA Claims Procedure [Docket No. 90].

11.    On April 3, 2024, Peter J. D'Auria, Esq., trial attorney for the United States Trustee for the District of New Jersey, conducted the 341(a) meeting of creditors of the Debtor's bankruptcy proceeding.

12.    On April 16, 2024, the Debtor filed a motion seeking an order authorizing it to sell its FFE free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) [Docket No. 115]. On June 21, 2024, the Bankruptcy Court entered an order authorizing the Debtor to sell its FFE free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) [Docket No. 210].

13.     On April 17, 2024, the Bankruptcy Court entered an order authorizing the Debtor to reject certain unexpired leases and executory contracts *nunc pro tunc* to the Petition Date [Docket No. 124].

14.    On April 23, 2024, the Debtor filed amendments to its Schedule E/F in order to list 126 employees that were terminated prepetition as priority unsecured creditors [Docket Nos. 149 and 150].

15.    On April 30, 2024, the Debtor filed an application to retain Smolin Lupin as ordinary course accounting professionals [Docket No. 172]. On May 22, 2024, the Bankruptcy Court entered an order authorizing the Debtor to retain Smolin Lupin as ordinary course accounting professional [Docket No. 192].

16.    May 31, 2024, the Debtor concluded the PACA Claims Procedure by filing a Notice of Filing of PACA Trust Chart [Docket No. 202].

17.     On May 31, 2024, the Bankruptcy Court entered a Stipulation and Consent Order Extending the Debtor's to File a Plan Pursuant to 11 U.S.C. § 1189(b) to July 12, 2024. [Docket No. 203].

18.     On June 12, 2024, the Bankruptcy Court entered a Consent Order (I) Rejecting Certain Lease for Non-Residential Real Property; (II) Setting Procedure for Transition of Non-Residential Real Property From Debtor to Landlord; and (III) for Other Relief [Docket No. 208].

19.     On July 12, 2024, the Debtor, in conjunction with Columbia and certain PACA Creditors, submitted to the Bankruptcy Court a Stipulation and Consent Order Authorizing and Directing the Debtor to Pay (I) the Claims of Valid PACA Trust Creditors; and (II) the Allowed Secured Claim of Columbia Bank Pursuant to 11 U.S.C. §§ 105(a) and 353(c) (the "Payment Stipulation")[2].

20.     On or before July 12, 2024, the Debtor filed the within liquidating plan.

**1.10    Projected Recovery of Avoidable Transfers.**

The Debtor has not yet completed its investigation with regard to prepetition transactions but will do so soon. That said, the Debtor estimates that it made payments totaling approximately $9,000,000 to over 200 non-PACA vendors during the 90 days prior to the Petition Date.

If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor, or other fiduciary of the bankruptcy estate, may seek to avoid such transfer.

## ARTICLE 2

## THE PLAN

The Plan describes how Creditors will be paid. Certain Claims entitled to specific treatment under the Code are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest is impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants in that class are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims

---

[2] To the extent entered by the Bankruptcy Court, the Payment Stipulation authorizes the Debtor to make payment, prior to the Effective Date, on account of: (1) valid PACA Claims; and (2) the secured claim of Columbia.

that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**2.1    Unclassified Claims.**

Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A. PACA Claims

The Debtor's assets are subject to the statutory "floating" trust established under Section 5(c)(2) of the PACA, 7 U.S.C. § 499e(c)(2) (the "PACA Trust Assets"). The PACA Trust Assets, i.e., the funds held by the Debtor that are sufficient to pay its PACA Creditors, are not property of the bankruptcy estate subject to distribution to other creditors. See In re Morabito Bros., 188 B.R. 114, 116 (Bankr. W.D.N.Y. 1995). Here, the Debtor has cash on hand sufficient to pay its PACA Creditors in full on the Effective Date, if not earlier.

B. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    Ordinary course expenses resulting from the Debtor's financial affairs following the bankruptcy filing are Administrative Expenses and entitled to be paid in full for the goods or services provided. This ordinary debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its Creditors.

2.    If the debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, a claim for the value of the goods received may, upon proper and timely filing, be deemed an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the Allowed Claim of the Subchapter V Trustee for fees and/or reimbursements, and including fees and expenses for attorneys and accountants employed upon Bankruptcy Court authority to render services to the

7

Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | The Debtor is conducting its business in the ordinary course, including paying its post-petition trade, utilities, and tax debt as they come due. These expenses are expected to be minimal.  As of the filing date of the Plan, no requests for an administrative expense of this type have been filed on the Bankruptcy Court's electronic claims docket or case docket | Payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of Plan, or as soon as practicable thereafter; (ii) on a date mutually agreed upon between the Debtor and the creditor; and (iii) the entry of a final order allowing the claim. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | As of the filing date of the Plan, no requests for an administrative expense of this type have been filed on the Bankruptcy Court's electronic claims docket or case docket | Payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of Plan, or as soon as practicable thereafter; (ii) on a date mutually agreed upon between the Debtor and the creditor; and (iii) the entry of a final order allowing the claim. |
| Administrative Tax Claim | The Debtor will continue to pay all applicable post-petition taxes as they come due.  These expenses are minimal in the Debtor's ordinary course of business. | Payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of Plan, or as soon as practicable thereafter; (ii) on a date mutually agreed upon between the Debtor and the creditor; and (iii) the entry of a final order allowing the claim. |
| Professional fees, as approved by the Bankruptcy Court | Professional fees for RLT are estimated to be $150,000.00. RLT filed a first interim fee application on June 27, 2024, seeking $122,422.50 in fees and $6,805.44 in expenses. A | After Bankruptcy Court approval, Payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of |

8

| | | |
|---|---|---|
| | hearing on RLT's first interim fee application is scheduled for August 1, 2024 at 10:00 a.m. | Plan, or as soon as practicable thereafter; (ii) on a date mutually agreed upon between the Debtor and the creditor; and (iii) the entry of a final order allowing the claim. |
| Clerk's Office fees | Clerk's Office fees are estimated to be $0.00, or nominal. | Paid in full on the Effective Date. |
| Other Administrative Expenses | Post-Petition Rent for April 2024 and May 2024 in the approximate amount of $215,620.55. | Payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of Plan, or as soon as practicable thereafter; (ii) on a date mutually agreed upon between the Debtor and the creditor; and (iii) the entry of a final order allowing the claim. |
| Trustee | Trustee fees are estimated to be $20,000.00. | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>Payment in full no later than the later of: (i) the Effective Date of Plan, or as soon as practicable thereafter; and (ii) the entry of a final order allowing the claim. |
| TOTAL | $385,620.55 | |

### C. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The State of New Jersey and the IRS have both filed proofs of claim in the Debtor's case. See Claim Nos. 26 and 54. The Debtor estimates its actual liability for these claims totaling no more than $12,000. On July 9, 2024, the IRS filed an amended proof of claim in the amount of $0.00. See Claim No. 26.

### D. Classes of Priority Unsecured Claims

Certain Priority Claims that are referred to in Sections 507(a)(l), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim

receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The Debtor estimates its liability to its former employees to be as much as $2,000,000 under Sections 507(a)(4) and (5) of the Code due to its alleged liability under the federal and state WARN acts. The Debtor anticipates that its former employees, or their designated representatives, will accept, in full and final satisfaction and release of their alleged WARN act claims, a different treatment, to wit, *pro rata* distribution from the Debtor's remaining assets, after payment in full is made to: (1) Columbia; (2) allowed PACA Claims; and (3) administrative claims.

**2.2    Classes of Claims and Equity Interests.**

The following are the voting classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class# | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured Claim of Columbia | No | Not Impaired | The Claim will be satisfied in full on the Effective Date, if not earlier. |

B.    Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  All Creditors not otherwise classified herein shall be deemed General Unsecured Claims.

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | General Unsecured Class | Impaired | *Pro rata* payment of Allowed Unsecured Claim as soon as practicable following payment in full of: (1) Columbia; (2) allowed PACA Claims; (3) administrative claims; and (4) allowed priority general unsecured claims. The Debtor does not anticipate there being any funds available |

10

| | | | | for distribution to general unsecured creditors. |
|---|---|---|---|---|
| | | | | |

### C.    Class of Equity Interest Holders

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company, the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of Equity Interest holders:

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Equity Interest Class. The Debtor is a New Jersey limited partnership with 2 partners: RLB Food Enterprises (95%) and PF Ventures LLC (5%) | Impaired | Payment of surplus funds, if any, after confirmation and all distributions made pursuant to the Plan. The Debtor does not anticipate there being any funds available for distribution to equity. |

### 2.3    Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

### 2.5    Rejection of Executory Contracts and Unexpired Leases.

All Executory Contracts in which the Debtor has an interest, whether listed on the Debtor's Official Form 206G or not, shall be rejected by the Debtor unless assumed prior to or upon the entry of the Confirmation Order.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject an Executory Contract, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

Pursuant to D.N.J. LBR 3003-1(b), the deadline for filing a proof of claim based on a claim arising from the rejection of an Executory Contract is thirty days after rejection. Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed unless the Bankruptcy Court orders otherwise.

### 2.6    Means for Implementation of the Plan.

On the Effective Date, the Debtor will have completed an orderly wind-down of its business and liquidation of its assets. Specifically, the Debtor will have completed filling all outstanding orders with its remaining inventory. Additionally, the Debtor will have collected nearly all of its outstanding A/R. Similarly, the Debtor has already completed the liquidation of its FFE through an on-line auction. Further, the Debtor will investigate, assess and determine if any avoidance actions should be pursued to benefit recoveries to Creditors.

The Debtor will use its (1) Cash; (2) A/R; (3) Money Market; (4) proceeds of Avoidance Actions; and (5) the proceeds from the already completed liquidation of: (i) FFE and (ii) Inventory to pay Columbia in full, PACA Creditors in full, the costs of administration in full, and allowed priority and general unsecured creditors to the extent possible.

Post-confirmation the now confirmed Debtor (the "Reorganized Debtor") will continue to administer its assets, including the prosecution of Preferences, for the benefit of its creditors. The Reorganized Debtor, with RLT as counsel, will act as disbursing agent for payments to its remaining creditors, including its priority general unsecured creditors. The Reorganized Debtor may pay its professionals, including RLT and the Subchapter V Trustee, without further order of the Bankruptcy Court. When the Reorganized Debtor has completed the administration of its assets, it will, on notice to the Subchapter V Trustee, dissolve in accordance with state law.

### 2.7    Payments.

If the Plan is confirmed under § 1191(a) or (b), the Reorganized Debtor shall make all Plan payments to Creditors provided for in the Plan. However, to the extent that the plan is confirmed pursuant to 11 U.S.C. § 1191(b) the Subchapter V Trustee shall make the distributions under the Plan.

### 2.8    Post-Confirmation Management.

The Debtor's current management shall continue to serve post-confirmation.

### 2.9    Tax Consequences.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys and/or Advisors.***

12

**2.10    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in Exhibits "A."

### ARTICLE 3

### FEASIBILITY OF PLAN

**3.1    Ability to Initially Fund Plan.**

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. A table showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit "A."

**3.2    Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The Debtor is liquidating under this Plan and will not require further reorganization.

### ARTICLE 4

### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "B." The liquidation analysis demonstrates that a liquidation of the Debtor's assets will generate no greater distributions for any party, and thus the Plan satisfies what is known as the "best interests test."

### ARTICLE 5

### DISCHARGE

**5.1    No Discharge.**

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

### ARTICLE 6

### GENERAL PROVISIONS

**6.1    Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the

order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Code, whichever occurs first. Except as provided in § 1185 of the Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**6.2    Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**6.3    Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4    Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all   applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any  cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5    Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6    Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7    **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## ATTACHMENTS

The following documents accompany the Plan:

A.  Tables showing the amount of cash on hand as of the Effective Date, are annexed as Exhibit "A."

B.  A Liquidation Analysis is annexed as Exhibit "B."

## ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you

15

do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while it remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Liquidation?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established for the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is August __, 2024. Ballots should be sent by regular mail to the following address: Barry J. Roy, Esq., Rabinowitz, Lubetkin & Tully, LLC, 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039.

**How Do I Determine When and How Much I Will Be Paid?** Section 2.2 details the timing Creditors can expect payment. Creditors can expect pro rata payment of their Allowed Claim along with other holders of Allowed Claims.

16

## ARTICLE 9

## **DEFINITIONS**

**9.1** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2**      **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3**      **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtor's estate under Chapter 123, Title 28, United States Code.

**9.4**      **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.5**      **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed, was filed late with leave of the Bankruptcy Court or without objection by the Debtor, or allowed pursuant to the Plan and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.6**      **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**9.7**      **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.8**      **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**9.9**      **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.10**      **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

17

**9.11**    **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.12**    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.13**    **Chapter 11 Case**: This case under chapter 11 of the Code in which the Debtor is a Debtor-in-Possession.

**9.14**    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.15**    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.16**    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.17**    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.18**    **Confirmation Hearing**: The hearing to be held on August __, 2024 to consider confirmation of the Plan.

**9.19**    **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code that is acceptable to the Judgment Creditors.

**9.20**    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.21**    **Debtor** and **Debtor-in-Possession**: RLB Food Distributors LP d/b/a FreshPro Food Distributors, the debtor-in-possession in this Chapter 11 Case.

**9.22**    **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.23**    **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

18

**9.24    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.25    Equity Interest**: An ownership interest in the Debtor.

**9.26    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Code.

**9.27    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.28    General Unsecured Claim**: An Unsecured Claim.

**9.29    General Unsecured Creditor**: A Creditor holding an Unsecured Claim.

**9.30    IRC**: The Internal Revenue Code.

**9.31    Petition Date**: February 28, 2024, the date the Chapter 11 Petition for relief was filed.

**9.32    Plan**: This Plan of Reorganization for the Debtor, either in its present form or as it may be altered, amended, or modified from time to time

**9.33    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Code.

**9.34    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36    Subchapter V Trustee**: Mark E. Hall, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**9. 37    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

DATED: July 12, 2024

**RABINOWITZ, LUBETKIN & TULLY, LLC**
*Counsel for the Debtor and Debtor-in-Possession*

By:    /s/ Barry J. Roy
       Barry J. Roy

## VERIFICATION

I, **PAT MELE,** hereby certify and verify under penalty of perjury that:

I am the Executive-Vice President and Chief Financial Officer of the Debtor. I have read this Plan of Liquidation and affirm that all factual references are true and accurate to the best of my knowledge, information, and belief.  I am aware that if any of the allegations contained in the foregoing reply are willfully false, that I am subject to punishment.

Pat Mele

DATED: July 12, 2024

**EXHIBIT A**

**PROJECTIONS OF CASH ON HAND**

| | |
|---|---|
| Projected Cash on hand on the Effective Date (est. 9/1/24): | $_____3,080,345_____ |
| Amount of Administrative Expenses Payable on Effective Date of Plan | $_____385,620.55_____ |
| Amount of statutory costs and charges | $_____0_____ |
| Amount of cure payments for executory contracts due on Effective Date | $_____0_____ |
| Other Plan Payment due on Effective Date | $_____2,573,131.16_____ |
| Balance after paying these amounts | $_____121,593.29_____ |

21

**EXHIBIT B**

**LIQUIDATION ANALYSIS**

| ASSETS | VALUE | LIQUIDATION VALUE |
|---|---|---|
| Bank Deposits | $3,080,345 | $3,080,345 |
| Avoidance Actions | Unknown | Unknown |
| Total Assets at Liquidation Value | | Unknown, but at least $3,080,345 |

| Liabilities | | |
|---|---|---|
| Administrative Claims (Chapter 7) (estimated) | | $60,000 |
| Administrative Claims (Chapter 11) (estimated) | | $385,620.55 |
| Secured Claim of Columbia Bank | | $594,524.14 |
| Valid PACA Claims | | $1,978,607.02 |
| Available Funds for Distribution to Priority Claims | | $121,593.29, plus value of any Avoidance Actions |
| Priority Tax Claims | | $12,000 (estimated) |
| Priority Wage Claimants | | $2,000,000 (estimated) |
| Pro Rata Distribution to Unsecured Claims (funds available to General Unsecured Claims divided by total Unsecured Claims) | | 0% |

22